UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. Bank NA, Successor Trustee to Bank of America, NA, Successor in Interest to LaSalle Bank NA, as Trustee, on Behalf of the Holders of the Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-AR8<br><br>**Plaintiff**<br><br>vs.<br><br>Peter F. Pike and Christina Pike<br><br>**Defendants**<br><br>USAA Federal Savings Bank ("USAA FSB")<br><br>**Party-In-Interest** | CIVIL ACTION NO: 2:19-cv-00396-JDL<br><br><br><br>**POST-TRIAL BRIEF ON THE LEGISLATIVE HISTORY OF 14 M.R.S. §6111**<br><br>RE:<br>43 Shagbark Lane, Eliot, ME 03903<br><br>Mortgage:<br>July 21, 2006<br>Book 14908, Page 829 |

Plaintiff, U.S. Bank NA, Successor Trustee to Bank of America, NA, Successor in Interest to LaSalle Bank NA, as Trustee, on Behalf of the Holders of the Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-AR8 ("U.S. Bank"), by and through undersigned counsel, pursuant to this Court's Order at ECF No. 90 for additional briefing regarding the legislative history of 14 M.R.S. §6111, hereby submits this, its Post-Trial Brief.

The Defendant's Post-Trial memorandum lays out the evolution of the statute and acknowledges the lack of guidance on the key questions the Court posed following the evidence at trial but concludes the statute "is not ambiguous". [ECF 94 pa.7] The Plaintiff concurs that the Legislative history is void of discussion on this issue. Although the amendments to change the statute reflect an attempt to clarify some of the statutory language, it is not clear why the changes

were implemented.  In reviewing the legislative history of 14 M.R.S. §6111, what is clear is that the legislature was reacting to the foreclosure crises of 2009, was focused on the proposed changes in the law to require mediation and eliminating the termination of a tenant's rights upon foreclosure.  In short, the existing statute reflects that the Legislature wanted lenders to provide a notice that gave a borrower a snapshot of the amount due, fix that amount in certain terms (no provision for future payments or advances during the cure period) such that the notice would provide a borrower with the opportunity to cure the default. [ECF 94-4, p. 3-256, ID 325-] The overarching theme of the legislation was to avoid confusion and make certain that borrowers understood what they owed and to whom, and to create a mediation forum to resolve as many disputes as possible.  Where, as here, the borrowers have a chapter 7 discharge from liability and have lived in a very valuable home free from the burden of taxes, insurance and mortgage debt for over a decade, refusing to modify the loan or even sell the property to retain equity, if any, it is clear the statute has created an incentive to "hold out" in hopes that any minor issue in the Notice to Cure will result in a "free house."  A review of the legislative history does not support this result.

     The original notice statute, 14 M.R.S. 6111, enacted June 15, 2009, provided, that the notice of right to cure shall include, "B. An itemization of all past due amounts causing the loan to be in default; (and) C. An itemization of any other charges that must be paid in order to satisfy the full obligations of the loan." [ECF 94-1 p.6, ID#306]  With the February 4, 2010, amendment, effective retroactively to June 15, 2009, it appears the Legislature sought to clarify that it was the amount to *cure the default* that a Notice of Right to Cure must communicate not "any other charges that must be paid in order to satisfy the full obligations of the loan" and the language in section C was amended to state, "An itemization of any other charges that must be

paid in order to cure the default." [ECF 94-2 p.4 ID#316] The Legislature did not, as other states had elected to do[1], specify the form of the notice or dictate what could and could not be included in the Notice of Right to Cure.  They could have elected to do so as evidenced in the amendment of Section B of 14 M.R.S. §6203-A (3) wherein the required form of the Notice of Sale is set forth. [ECF 94-2, p. 5 ID #317].  The selection of the language "other charges that must be paid in order to cure the default" indicates that in addition to principal and interest the notice needed to disclose charges that must be paid in order for a borrower to cure the default.  This left the discretion of the demand to cure the default in the Notice of Right to Cure in the hands of the lender.  Certainly, it would be inconsistent with the terms of loan contracts, as well as the statute, to have a Notice of Right to Cure include more than the amounts that caused the loan to become in default, but this language left the window open to, as would benefit borrowers, inclusion of less than every dollar owed on the loan.  It also left the lender the discretion to omit advances for attorney fees that pre-dated the demand, attorney's fees entirely, property preservation fees and expenses, and even taxes and insurance advanced.  The policy reasons for this amendment are evident in the spirit of the legislation, proposed on an emergency basis, to address an identified crisis.  [94-1 p.3 ID #303].

In 2015, on a non-emergency basis, the Legislature acted to further clarify what the Notice should include in amendment enacted October 15, 2015, which amended Section B and added Section H.  [ECF 94-3, p. 3, ID #322] As revised Section B requires, "B. An itemization of

---

[1] For example, on November 29, 2007, the Massachusetts Legislature enacted Chapter 206 of the Acts of 2007, which, *inter alia*, amended G.L. c. 244 by inserting Section 35A. **Section 35A further prohibits a lender from including in the Notice of Right to Cure charges, fees and penalties attributable to the borrower's exercise of their right to cure the default and/or attorney's fees incurred prior to or during the cure period set forth in the Notice.** *See id.* at § 35A(d). (emphasis added). The regulations relating to Section 35A specifically require the lender's Notice to conform to the form promulgated by the Division of Banks without deviation. *See id.* ("In accordance with 209 CMR 56.03, the '90-Day Right to Cure Your Mortgage Default' notice must conform to the following . . .").

all past due amounts causing the loan to be in default <u>and the total amount due to cure the default.</u>" [ECF 94-3, p. 3, ID #322] The Legislature also added Section H specifying that while advances may be made for various items during the cure period (i.e., taxes, insurance, property preservation, etc.) the Notice to Cure must fix the amount to cure the default and must include, "A statement that the total amount due does not include any amounts that become due after the date of the notice." [I.d.]  The interpretation of the 2015 amendment has resulted in confusion.  Are there two *separate* numbers required in the Notice of Right to Cure--all past due amounts causing the loan to be in default and the total amount due to cure the default?  If these numbers are the same there is no issue, however, when, as often happens, those numbers do not match, can the lender include a Demand to Cure in its Notice of Right to Cure that is less than the total due on the loan?

      The discussion of what a Notice of Right to Cure must include has shifted to the Courts and the lack of precision in the language of the statute, combined with the absence of precedent on the issue, has resulted in a split in decisions not only in this District but throughout the state courts.[2]  Nowhere in the legislative history is it even discussed that any deficiency in a Notice to Cure should, or even could, result in a judgment awarding the home free from a mortgage.  The present possibility of this outcome chills mediation and settlement efforts and encourages borrowers to litigate because the rewards are so significant.

      The lack of clarity in the language is reflected in the sharp contrast in decisions from this District considering nearly identical Notices of Right to Cure and coming to opposite conclusions. In *Wilmington Trust N.A. v. Vigneault*, 2021 WL 3598534, (D. Me. 2021).  Judge

---

[2] The additional historical factor not at issue in 2009 or even by 2015, is the line of case law arguably under review in *Moulton* including *Pushard v. Bank of America, N.A.* 175 A.3d 103 (Me. 2017); and *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230.

Hornby specifically found the notice complied with the statute:

> I conclude that the itemization here satisfies the statute. The "Payments" of $128,435.89 are the total of the past due amounts that the mortgagors never paid; the other charges are the late charges and attorney fees that the statute requires be itemized separately. The statute does not require the notice to separate out principal, interest, and escrow payments, and no Law Court case has held that such is required.
>
> *3 The defendant seems to argue that a proper calculation of principal, interest, and escrow balance as of the notices' date differs from the total payments that the notices identify as past due amounts. I have already quoted the statutory language. I see nothing in that language that requires the mortgagee to recalculate, as of the date of notice, exactly what the status of the escrow fund is (positive or negative) rather than rely on the total of missed monthly required payments that caused the default.
>
> I conclude that the itemization is sufficient.

Focused on the content of the notice and not only on its' admissibility, Judge Hornby further explained that had there been evidence that established that the amount to cure in the notice was too large, he would have a different conclusion,[3] but neither the fact that the notice included less than the total due on the loan at the time it was sent or the fact that the notice did not further breakdown the payments due to principal, interest, and escrow advances made the notice invalid.[4]

As this Court indicated following the presentation of the evidence in this matter, there may be good policy reasons for a Notice of Right to Cure to demand an amount to cure the default that is less that every dollar causing the loan to be in default, but because this Court's

---

[3] *Id.* at n.3 "If the notice had demanded more than was due for late charges, that could be a problem. But that is not the defendant's argument. Instead, he argues that the entries demonstrate the unreliability of the records for purposes of admissibility under 803(6). I disagree, and I see no reason why the mortgagee must demand *all* possible late charges in the notice of default and right to cure. If it omits some and the borrower meets the (thereby lower) demand stated in the right to cure, then the mortgagee can no longer seek to acquire the omitted late fees because any payment default will have been cured. See 14 M.R.S.A. § 6111(1), (1-A) ("the right to cure the default by full payment of all amounts that are due without acceleration"; listing what must be itemized in the notice and what must be paid to cure the default)."

[4] *Id.*

reading of the statute is that it requires the Notice to communicate both an itemization of all sums due on the loan and the amount needed to cure the default—even if those amounts are not consistent due to carve outs in the amount due to cure the default based on case law or an effort to be conservative, it follows to have a valid notice in this Court, the notice must include an itemization of everything that is due.

This reading of the statute as reflected in this Court's opinion in *Thomas,* is inconsistent with Judge Hornby's interpretation of the statue and highlights the ambiguity in the language which is not clarified by either the legislative history or the subsequent controlling case law.

This Court, inconsistent with the non-binding analysis in *Vigneault*, concluded that, "In short, an itemization of all past-due amounts causing the loan to be in default is a requirement under section 6111(1-A)(B) in addition to a statement of the amount due to cure the default." This Court specifically found that its reading of the legislative history supported the conclusion, that the framers intended the notice to include both, even if inconsistent:

> Although the plain language of 14 M.R.S.A. § 6111 is clear, I note that the statutory history of subsection (1-A)(B) also supports interpreting the statute's reference to an itemization of all past due amounts as a separate requirement. In 2015, this subsection required only "[a]n itemization of all past due amounts causing the loan to be in default." 14 M.R.S.A. § 6111(1-A)(B) (West 2015). Then the Legislature amended this subsection to insert "and the total amount due to cure the default." P.L. 2015, ch. 36, § 1 (effective Oct. 15, 2015). This history indicates that the need to provide an itemization of all past due amounts is a longstanding and independent requirement, not a superfluous rephrasing of the newer obligation to provide the total amount due to cure the default.

Given the Legislature's 2015 emphasis on making certain there were no future advances or amounts due mentioned in the letter, it is respectfully submitted that including a full reinstatement quote or detailed itemization of everything due on the loan even if *everything* includes amounts

not recoverable from the borrower, is inconsistent with the gravamen of the statute which is, fairly interpreted to be that the borrower should be given a fixed clear amount that they must tender to cure during the statutory period.

Given the sharp disagreement in the interpretation of this section by two respected Justices in this District, aside from the disagreement between counsel as advocates for their respective positions, it is clear that there is ambiguity in interpretation of the language of the statute that is not cured, to date, by binding precedent from the Law Court. It is this question that underpins the Plaintiff's request to certify this question to the Law Court to be filed forthwith.

WHEREFORE, based on foregoing, since Plaintiff has complied with both the terms and conditions of the Note and Mortgage, Plaintiff respectfully requests that this Court enter Judgment of Foreclosure and Sale on Count I, and alternatively, if not persuaded that the Pike Notice satisfies both requirements of the statute as outlined by this Court in *Thomas,* the Plaintiff requests that the Court present the question to the Law Court for Certification.

Respectfully submitted this 23rd day of August 2023

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq., Bar No. 5746
Attorney for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
RJL@dgandl.com

## CERTIFICATE OF SERVICE

I, Reneau J. Longoria, Esq., hereby certify that on this 23rd day of August 2023, I served a copy of the above document by electronic notification using the CM/ECF system and/or First Class Mail to the following:

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq., Bar No. 5746
Attorney for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
RJL@dgandl.com

## SERVICE LIST

Peter L. Hatem
200 U.S. Route 1
Suite 210
Scarborough, ME 04074-6003


USAA Federal Savings Bank ("USAA FSB")
10750 McDermott Freeway
San Antonio, TX 78288